C. A. O'MEARA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ORLANDO PETROLEUM CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELMHURST INVESTMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9822, 20399, 22557. Promulgated March 21, 1928.

102

*D. R. Hite, Esq.*, for the petitioners.
*Orris Bennett, Esq.*, for the respondent.

108

OPINION.

LITTLETON: At the hearing, the Orlando Petroleum Co. presented a motion asking that the Board rule that it has no jurisdiction in its appeal for the following reasons:

First, because in the stipulation it appears that the total income and excess profits taxes of this petitioner for the period covered by the deficiency letter, copy of which is attached to the petition, amount to $146,383.76; and said stipulation further shows that for the period covered by the deficiency letter, the petitioner filed its return on April 14, 1920, showing the amount of its tax at $218,203.81, and that this petitioner paid $218,203.81 as and for its income and excess profits taxes for the period covered by the letter, and therefore there was not and could not have been a deficiency, but was an overpayment.

Second, for the reason that before this appeal was filed, this petitioner brought its action in the United States District Court for the district of Kansas, First Division, to recover the amount of its overpayment for the same taxes for the same period covered by the deficiency letter attached to the petition, and that that action in the United States District Court is pending undetermined.

The first reason overlooks the statutory provision that jurisdiction is conferred on the Board in any case in which the Commissioner determines a deficiency and an appeal is duly filed with the Board (section 274, Revenue Act of 1926). Whether or not the deficiency as determined is correct, it is the function of the Board to determine, but the fact that upon examination by the Board it is determined that the deficiency which the Commissioner determined was erroneous to the extent that no deficiency in fact exists, will not oust the Board of its jurisdiction. In this proceeding the Commissioner determined that this petitioner's total tax liability was $154,767.19; that no tax had previously been assessed and that accordingly a deficiency existed of $154,767.19. This petitioner duly filed an appeal, asking the Board to find that no deficiency exists on the ground that there had already been assessed on its original return, and it had paid, an amount in excess of the deficiency now shown. The establishing of the facts contended for by this petitioner would serve to extinguish the deficiency and show an overpayment, but it would not alter the fact that in the first instance the Commissioner had determined a deficiency.

The second ground for this motion is the pendency of a suit in a Federal District Court for the year on appeal before the Board. The deficiency notice which forms the basis of this appeal was mailed to this petitioner on August 6, 1926, and on September 14, 1926, an action was brought by this petitioner in a Federal District Court for the recovery of an alleged overpayment of income and profits tax for the period covered by the deficiency notice. A similar situation was before the Circuit Court of Appeals, Third Circuit, in the case of *Suhr* v. *United States*, 18 Fed. (2d) 81, wherein it was held that a suit to recover as a refund an amount allowed by the Commissioner as a credit against a proposed additional assessment may not be maintained where an appeal from such assessment is pending before the Board of Tax Appeals. In its opinion, the court said:

Any taxpayer may appeal to the Board of Tax Appeals, but he must do so before his tax is assessed or collected. Section 274 (a), Revenue Act of 1926 (44 Stat. 9, 55). If appeal has thus been made to the Board, the tax not having been paid, the appellant may not also proceed in the courts, until the Board has determined the question of deficiency. If that question is decided against him, he may then pay the deficiency and sue in the District Court to recover, or he may appeal to the Circuit Court of Appeals.

The Board is of the opinion that the foregoing constitutes a sufficient answer to this petitioner's motion, and the motion for the dismissal of the appeal on account of lack of jurisdiction is accordingly overruled.

The next question raised in the petition of the Orlando Petroleum Co. relates to the credit to which it is entitled on account of taxes assessed and paid at the time of filing its original return. The material facts with which we are here concerned are as follows: The Orlando Petroleum Co. and the Elmhurst Investment Co. filed a consolidated return for 1919 in which was shown a consolidated tax liability of $297,748.91. At the same time, the Orlando Petroleum Co. filed an information return as a subsidiary on which it was stated that the amount of tax apportioned to it was $218,203.81. The parties have stipulated that in the payment of the total tax liability for the group of $297,748.91, the Orlando Petroleum Co. furnished $218,203.81 and the Elmhurst Investment Co. $79,545.10. The entire amount of $297,748.91 was assessed against the Elmhurst Investment Co., which company made payment of same with its own checks on which appeared notations of the amount applicable to each company, the notation with respect to each company being in agreement with the amount which the parties have stipulated as being furnished by each. In the deficiency notice which forms the basis of this appeal, and which was submitted in evidence, the respondent showed the amount previously assessed against the Orlando Petroleum Co. as "None" and accordingly found a deficiency of $154,767.19, the total tax liability of this petitioner. In the deficiency notice to the Elmhurst Investment Co. which was prepared some months later than the deficiency notice to the Orlando Petroleum Co., and which was likewise submitted in evidence, the respondent gave the Elmhurst Investment Co. credit of $79,545.10, and stated that the remainder of the $297,748.91, or $218,203.81 which had been assessed against the Elmhurst Investment Co. was properly applicable to the Orlando Petroleum Co.

The question is the effect to be given in determining a deficiency in the case of the Orlando Petroleum Co. to the assessments and payments made on account of its tax liability at the time the consolidated return was filed. Under the provisions of section 273, Revenue Act of 1926, it is the duty of the Commissioner to determine the deficiency upon the basis of the correct amount of tax, less the amount of tax shown by the taxpayer upon his return with other adjustments not here in issue. Section 240 (a) of the Revenue Act of 1918 provides in part as follows:

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such propor-

tions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each.

The deficiency was determined without allowing any credit to the Orlando Petroleum Co. for taxes assessed on the consolidated return in which its income was included. While there is insufficient evidence before us to substantiate a finding that there was an agreement which would control as to all apportionments of taxes as between the two companies, or the basis of the agreement which existed between them, we are of the opinion that the record before us justifies the conclusion that of the taxes assessed and paid on account of the tax liability shown on the consolidated return of the Elmhurst Investment Co. and the Orlando Petroleum Co. an amount of $218,203.81 was properly attributable to the latter company and should have been allowed as a credit against the total tax liability of this company in determining whether a deficiency exists. This amount is shown in the information return as apportioned to this company and is the amount furnished by this company to the Elmhurst Investment Co. which paid the tax, and showed by notations on its checks that this amount was applicable to the Orlando Petroleum Co. This is likewise in accord with the admission of the Commissioner in the deficiency notice to the Elmhurst Investment Co. which was submitted in evidence and which denies a credit to the Elmhurst Investment Co. of the entire tax assessed against it for the reason that $218,203.81 was applicable to the Orlando Petroleum Co. This was also, in effect, admitted by the respondent at the hearing.

The Board is accordingly of the opinion that in the redetermination of the tax liability of the Orlando Petroleum Co. credit should be given against such tax liability of $218,203.81 which was assessed and paid when the consolidated return in question was filed. Cf. *Mather Paper Co.*, 3 B. T. A. 1, and *Cincinnati Mining Co.*, 8 B. T. A. 79.

The next assignment of error relates to the appeal of the Elmhurst Investment Co. in which this petitioner asks the Board to rule that the Board should not proceed further with this appeal for the reason that prior to the issuance of the deficiency notice which forms the basis of its appeal this petitioner had duly brought an action in a Federal District Court for the recovery of an alleged overpayment of taxes for the period covered by the deficiency notice and such action was pending undetermined at the time of the hearing of this appeal.

The material facts with respect to this issue are that this petitioner filed a claim for refund for the overpayment of taxes in 1919. After six months had expired and the Commissioner had not taken action on this refund claim, this petitioner brought suit in a United States

District Court for the recovery of an alleged overpayment of taxes for 1919 in the amount of $8,655.73. Two months after this suit had been begun, the Commissioner issued a deficiency notice to this petitioner showing a deficiency of $153,846.15. Upon receipt of the deficiency notice, this petitioner filed a petition with the Board asking, among other things, that an order be entered abating this proceeding pending the determination of the matters in controversy in the Federal District Court, and also assigning various errors with respect to the determination. In other words, as we understand the issue, it is not a challenge of the jurisdiction of the Board, but the question is as stated by petitioner in its brief: "Where the jurisdiction of a district court of the United States has attached in an action by a taxpayer to recover an alleged overpayment of internal revenue taxes, is such jurisdiction arrested or impaired by the subsequent determination of the Commissioner of a deficiency and the mailing to the taxpayer of notice thereof under section 274 of the Revenue Act of 1926?"

The jurisdiction of the United States District Courts in actions to recover alleged overpayments of internal revenue taxes is conferred by the Judicial Code, § 24(20), which reads as follows:

Concurrent with the Court of Claims, * * * of any suit or proceeding commenced after the passage of the Revenue Act of 1921, for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws, even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead or is not in office as collector of internal revenue at the time such suit or proceeding is commenced. * * *

Section 274 (a) of the Revenue Act of 1926 provides as follows:

If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. Except as otherwise provided in subdivision (d) or (f) of this section or in section 279, 282, or 1001, no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. Notwithstanding the provisions of section 3224 of the Revised Statutes the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

The exceptions referred to in the preceding section are not material to the question here in issue. It therefore appears that the

action taken by the Commissioner was the action authorized and required of him under the statute for the assessment and collection of any deficiency which he may have considered due from this petitioner and that this course of procedure is entirely different from the right of this petitioner to seek a recovery *of an alleged overpayment of taxes* through an action in a Federal District Court under the authority of the Judicial Code as set out above. It is, of course, true that the Commissioner could interpose as a defense to such an action that there were taxes due in excess of the refund claimed by the petitioner, but the mere fact that such a defense could be interposed, does not mean that the same cause of action is being litigated in two courts of concurrent jurisdiction at the same time. The action of the Commissioner in issuing a deficiency notice was in compliance with the spirit and purpose of the statute to permit an adjudication of tax controversies prior to the time when payment would be required.

The petitioner relies in part on the reasoning set out in *Suhr* v. *United States, supra,* wherein the court held that where an appeal was pending before the Board on account of an alleged deficiency a suit begun in a Federal District Court after the issuance of the deficiency notice was premature and should be dismissed. By analogy, this petitioner says, where the suit was begun before the issuance of the deficiency notice, the suit should take precedence over the appeal which was filed as a result of the issuance of the deficiency notice and require the Board to suspend action as far as the appeal is concerned until the suit is determined. This argument, however, overlooks the fact that where a deficiency has been asserted and jurisdiction has attached on the part of the Board, the Board not only may determine the extent to which a deficiency exists, but also may find that the petitioner is entitled to judgment on account of an overpayment, (section 284 (e), Revenue Act of 1926). Concurrent jurisdiction thus exists between the District Court and the Board with respect to overpayments, but this condition does not extend to a controversy with respect to a deficiency. When an appeal is filed on account of the issuance of a deficiency notice, there is involved not only the deficiency but also an overpayment which might be found to be due on account of the issues in controversy. On the other hand, no provision is made in the jurisdiction conferred on the District Court to permit this court to accomplish the same results with respect to a deficiency as would be effected through an appeal to the Board. The motion of the Elmhurst Investment Co. for an abatement of action on its appeal pending the decision of the District Court in a suit for an alleged overpayment of taxes for the same year is accordingly overruled.

The next question relates to the claim of the Elmhurst Investment Co. and C. A. O'Meara that they realized no taxable gain upon the transfer to the Orlando Petroleum Company of their undivided interests in certain leases in exchange for capital stock of this corporation, their contention being that the transfer was one which affected only the form of ownership and was not one of substance. These petitioners further contend that even if it should be found that a sale was effected when the transaction in question took place, no taxable gain could result for the reason that the stock received had no market value. With respect to the first contention advanced, the board had before it in *Napoleon B. Burge and C. B. Burge*, 4 B. T. A. 732, the identical question which is here presented (the *Burge* appeals involving two individuals who were similarly involved in the same transaction with which we are now concerned) and there held that the transfer of the leases for the capital stock was an exchange of property which resulted in taxable income under section 202 of the Revenue Act of 1918. We fail to find anything in the arguments advanced by counsel for the petitioners who appeared as *amicus curiae* in the *Burge* appeals which would cause us to reach a different conclusion in the cases at bar from that reached in the *Burge appeals*, in so far as it was there decided that the transaction in question was an exchange or sale of property.

In determining the taxable income realized in the *Burge* appeals, the Board held that the fair market value of the stock of the Orlando Petroleum Co. on April 15, 1919, was the same as the fair market value of the property transferred to this corporation on that date, which, in those proceedings as in these, the parties stipulated was $1,096,339.87. No proof was offered in the *Burge* appeals that the fair market value of the stock was different from that determined in the manner set out above. In the cases now under consideration, the petitioners seek to show that the stock of the Orlando Petroleum Co. had no market value on April 15, 1919, and, therefore, no taxable income resulted when the exchange in question was effected. Three witnesses were offered in support of the foregoing contentions. The first witness, a man familiar with the stock in question and the oil leases which were transferred in exchange for this stock, testified that the stock on April 15, 1919, was speculative in character and had no market value to his knowledge. On cross examination in reply to a question as to what he meant by the statement that the stock had no market value, he said:

Well, I meant by that that there was no place where it was being sold and there were no sales of it made and none offered for sale, so far as I know, and I thought I had good opportunities to know.

C. A. O'Meara, one of the petitioners in these proceedings, likewise testified that this stock was speculative and gave his reason for such a conclusion in the following testimony:

Q. I was asking you, Mr. O'Meara, why you state this stock was purely speculative or wholly speculative in view of the estimated value of these leases.

A. The reason this stock was speculative, as I started out to say, was that we had a bunch of leases down there that were wild-cat leases. We had drilled two holes, one a producer and one a dry hole, and as far as we had gone we had shown that there was no certainty of a producing field being found there.

Q. Am I to understand from your answer that this estimate of the value of the oil there was also speculative?

A. Wholly.

Q. You say wholly?

A. Wholly speculative. It could not be otherwise.

He testified further that he did not offer his stock for sale at this time, and that he did not know of any offers to sell or buy this stock at this time. The third witness, a stockbroker, testified that oil stocks were usually speculative and that he was prejudiced against them because as a rule they were not worth anything. He had no knowledge of offers to buy or sell this stock.

The Board is not convinced that the testimony of the foregoing witnesses justifies the conclusion that the stock in question had no market value on April 15, 1919. The fact that this stock was speculative does not mean that it had no market value; speculative stock may have a market value, but its value might be less because of its speculative nature. Apparently the speculation here involved was as to whether oil could be produced on the properties covered by the leases in question which were practically the only assets owned by the Orlando Petroleum Co. When the parties stipulated that the assets had a fair market value of over one million dollars, it must be assumed that this took into consideration the lower value which must be given to proven, as compared with unproven, territory. Nor does the testimony that no stock was sold show there was no market value attaching to this stock. The entire capital stock of the Orlando Petroleum Co. was issued to a corporation and five individuals, and in the contract under which the leases were transferred in exchange for this stock, it was provided that: " Under no circumstances will the corporation sell any of its stock to anyone other than the parties hereto." The stock was thus not only closely held in the first instance, but also these parties arranged to control any future sales of the stock by the corporation. It is, therefore, not surprising that the stock was not offered for sale at or about the date of organization of the corporation, and that we have no evidence of sales at this time.

In such circumstances, should the Board say that a transaction does not result in a taxable profit when the assets sold cost approxi-

mately $100,000 and had a value at the date of the exchange of approximately $1,000,000? We think not. It would be an unusual proposition to say that a profit is not realized under such conditions and as a corollary thereto that in the case of future sales of this stock the entire sales price would be profit or that we should revert to the original cost of approximately $100,000 as a basis of determining gain or loss on the transaction when there has been an intervening sale at a time when the assets back of the stock had appreciated to a value of approximately $1,000,000. The only alternative offered by the petitioners to the profit computed by the respondent is " no taxable profit." This we can not accept. Doubtless, conditions might exist in other cases, and evidence might be furnished of sales of stock, which might show that the fair market value of stock and the fair market value of the asset back of the stock were not identical, but we are without such evidence in this case. The Board is accordingly of the opinion that a determination of the fair market value of the stock on the basis of the fair market value of the assets back of stock is justified in this instance. This is in accord with prior holdings of this Board and finds support in cases adjudicated by the courts. *William Ziegler, Jr.*, 1 B. T. A. 186; *Wallis Tractor Co.*, 3 B. T. A. 981; *Rose C. Pickering*, 5 B. T. A. 670; *Walter* v. *Duffy*, 287 Fed. 41; *Phillips* v. *United States*, 12 Fed. (2d) 598; *In re Dupignac's Estate*, 204 N. Y. S. 273; *Heiner* v. *Crosby* and *Heiner* v. *Anderton*, 24 Fed. (2d) 191. We fail to find anything in *Bourn* v. *McLaughlin*, 19 Fed. (2d) 148, on which much reliance was placed by the petitioners, which would lead us to reach a different conclusion. If for no other reason, this case can be distinguished from the case at bar by the express statement of the court that the stock could not have been disposed of " except at such a sacrifice as to amount to a virtual donation," and that attempts to sell the stock were unsuccessful. The case of *Van Heusen* v. *Commissioner of Corporations and Taxation*, 154 N. E. 257, which was likewise relied upon by the petitioner, can not be considered controlling for the reason that it arose under a State taxing statute, and involves the interpretation of a statute which differs materially from the Federal statute which governs our actions in the case under consideration.

The next question is whether the respondent was correct in applying section 331 of the Revenue Act of 1918 in determining the invested capital of the Orlando Petroleum Co. Five individuals and the Elmhurst Investment Co. owned undivided interests in certain oil leases and personal property appertaining thereto, which cost them $105,423.21. These assets had a value of $1,096,339.87 on April 15, 1919, when they were transferred to the Orlando

Petroleum Co., in exchange for its entire issue of capital stock, the owners receiving stock of the corporation in proportion to the interests which they had in the assets transferred.

We have heretofore held in this opinion that the foregoing transaction was an exchange which resulted in a taxable profit to the vendors. This petitioner contends that in case of such a holding, its invested capital should be determined under section 326 of the Revenue Act of 1918, and that there should be allowed in invested capital the cash value of assets at this time, or $1,096,339.87, rather than only $105,423.21 as allowed by the respondent. This argument overlooks the important consideration that the sections of the statute defining income are separate and distinct from those dealing with invested capital, and that from the fact that there is a realization of the appreciation in value of an asset which results in taxable income, it does not necessarily follow that the appreciated value of the asset may be allowed in the invested capital of the party to whom transferred. This is in accord with many decisions of the Board and was recently again stated in *Farnsworth Pinney Co.*, 10 B. T. A. 1008. Section 331 of the Revenue Act of 1918 was enacted as a limitation on certain classes of transfers which took place after March 3, 1917 and provides as follows:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

Here there was clearly a " change of ownership of property," after March 3, 1917, in which " an interest or control in such * * * property of 50 per centum or more " remained in the same persons, and accordingly, the value allowable to the Orlando Petroleum Co. for invested capital purposes on account of the assets transferred to it on April 15, 1919, would be $105,423.21.

In making a recomputation of the deficiencies involved in these proceedings, effect should be given to certain errors on the part of the respondent on which the parties have reached an agreement and

which appear in our findings of fact as a part of the stipulation which was entered into.

The assignments of error contained in the petition of the Elmhurst Investment Co. with respect to invested capital, depreciation, and depletion having been denied by the respondent, and no evidence having been introduced in regard thereto, the respondent's action on these points is affirmed.

*Judgment will be entered on 10 days' notice, under Rule 50.*