## COMMISSIONER OF INTERNAL REVENUE v. MORSMAN.

### No. 8644.

Circuit Court of Appeals, Eighth Circuit.

Nov. 10, 1930.

Prew Savoy, Sp. Atty., Bureau of Internal Revenue of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and Barham R. Gary, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Sewall Key, Sp. Asst. to Atty. Gen., both of Washington, D. C., on the brief), for appellant.

Edgar M. Morsman, Jr., of Omaha, Neb., for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the United States Board of Tax Appeals entered January 14, 1929. From the record it appears that on August 1, 1922, Edgar M. Morsman, a resident of Omaha, Neb., executed a trust agreement by the terms of which he created a trust and transferred to United States Trust Company, a corporation organized under the laws of the state of Nebraska, in trust, certain notes, bonds, securities, choses in action, and property. Power to change the trustee was reserved to the donor and his four sons, beneficiaries under the trust. The trustee was given full power to manage, sell, invest, and reinvest the trust property according to its best judgment, with the proviso that, in selling property and making investments, the trustee should accept and follow the written advice of the donor and one of his sons. The income from the trust was to be paid monthly to the donor during the term of his natural life, and for a period of two years after the death of the donor to be divided equally between his four sons. At the expiration of two years after the death of the donor, the trust was to terminate and the fund equally divided between the four sons, with the further condition that, in case any of the sons should die prior to two years after the donor's death, leaving no issue surviving, then the entire fund to be divided among the surviving sons; but, in

case of death of a son leaving issue, his share to go to such issue. The donor reserved no estate or power to himself alone, except as to the net income of the trust during his lifetime.

Edgar M. Morsman, the donor, died on April 6, 1925. The question then arose whether the value of the property held in trust at the date of decedent's death was properly included in his gross estate under section 302 (c) of the Revenue Act of 1924.

The Revenue Act of 1924, c. 234, 43 Stat. 253 (26 USCA § 1094 note), provides in part as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. * * *

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

The Board of Tax Appeals by a majority decision held that the value of the corpus of the trust should not be included in determining the value of the gross estate subject to tax. In deciding that question, the majority opinion recites:

"Our decision as to the first issue in this proceeding is governed by Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Edward H. Alsop, Executor, 7 B. T. A. 848; and James Duggan, Executor, 8 B. T. A. 482. Cf. Charles L. Harris, Administrator, 5 B. T. A. 41, and Wilmington Trust Co., Executor, v. United States (D. C., Del.) 28 F.(2d) 205, decided September 6, 1928. The transfer made by deceased on August 1, 1922, was made under the provisions of the Revenue Act of 1921 (42 Stat. 227). His death occurred on April 6, 1925. Title 4 (Estate Tax) of the Revenue Act of 1921 (42 Stat. 277, §§ 400–411) was repealed by section 1100(a) of the Revenue Act of 1924, approved June 2, 1924 (43 Stat. 352). Section 302(c) of the Revenue Act of 1924 is identical with section 402(c) of the Revenue Act of 1921 (42 Stat. 278), and section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097).

"The Supreme Court held that the latter section was invalid in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death. The transfer herein involved is of the character of that referred to in Nichols v. Coolidge, supra. Section 302(c) of the Revenue Act of 1924 can have no effect to include as a part of the gross estate the property transferred in trust by decedent on August 1, 1922."

The Commissioner of Internal Revenue has filed in due course a petition to review such decision of the United States Board of Tax Appeals.

It will be observed that the Board of Tax Appeals bases its decision squarely upon the authority of Nichols v. Coolidge, supra, citing no other court decision in support of its conclusion. Nichols v. Coolidge, supra, is to be distinguished from the case here under review by the fact that Mrs. Coolidge, the donor, in her deeds of trust divested herself entirely of all interest in the trust estate, reserving to herself nothing which would terminate or cease on the event of her death. In the case under review, Edgar M. Morsman, the donor, reserved to himself the entire net income from the trust estate during his natural life, the right to receive such net income ceased upon his death and immediately devolved upon the beneficiaries named.

It is urged in argument that the Coolidge Case holds that an interpretation of the law which made it applicable to a transaction completed prior to passage of the act, even though enjoyment of the transfer arose after passage of the act, would make the act unconstitutional. We do not think the Coolidge Case can be said to so hold. The situation specified did not exist in Nichols v. Coolidge, for Mrs. Coolidge reserved nothing to herself during her lifetime. Contrary to appellee's contention, we think the language of the court in Nichols v. Coolidge indicates that the court entertained a contrary opinion. Referring to section 402 of the Act February 24, 1919, the court said:

"The language of this section inhibits the conclusion that only subsequent transfers are to be included. Under Lewellyn v. Frick, 268 U. S. 238, 251, 45 S. Ct. 487, 69 L. Ed. 934, only such transfers come within section 402 (f), Shwab v. Doyle, 258 U. S. 529, 536, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, confined section 202 (b), Act September 8, 1916, c. 463, 39 Stat. 756, 777—prototypes of section 402 (c), Act 1919 —to subsequent transfers. The emphatic words, 'whether such transfer or trust is made or created before or after the passage of this act,' added by the latter act, evidently were intended to exclude a like construction."

It is further contended in argument that section 302 (c) of the Revenue Act of 1924 does not contain the words "whether such transfer or trust is made or created before or after the passage of this act," as do certain of its prototypes, and therefore the 1924 act must be confined to subsequent transfers. This contention would involve the assumption that subdivision (h) of section 302 (26 USCA § 1094 note) is not an equivalent of the omitted language referred to. Subdivision (h) provides:

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

We think appellee's contention upon this point is not sound, and we discern no reason to conclude that the provision carried in subdivision (h) is not equally inclusive as that carried in section 402 of the Revenue Act of 1918.

It is strenuously urged by counsel for appellee that this case is ruled by May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 62 A. L. R. 1244. In that case by a trust instrument Pauline May, wife of Barney May, "transferred, set over and assigned" to Barney May and others, as trustees, certain described securities, etc., in trust, to collect the income therefrom, and, after discharging taxes and expenses, to pay the balance "to Barney May during his lifetime, and, after his decease, to Pauline May during her lifetime, and after her decease, all the property in said trust, in whatever form or shape it may be, shall, after the expenses of the trust have been deducted or paid, be distributed equally among" her four children, their distributees, or appointees. The Supreme Court held in that case that the trust created took immediate effect in possession or enjoyment, and that the contingency of the donor coming into the income of the trust on the death of her husband was not material. It is quite obvious that when Pauline May executed the trust agreement she divested herself entirely of all interest in and control of the trust property, and that the beneficiary immediately took the use and enjoyment thereof. The possibility of the donor surviving the immediate beneficiary and reserving the income did not negative the accomplished fact that the trust as to Barney May took effect in possession and enjoyment immediately upon its execution. It is urged that, to distinguish the case at bar from May v. Heiner leads to an absurdity, and the supposition is indulged that the trust deed agreement might permit the income to accumulate for one month, or give the income for one month to a third person, and then reserve the income to the donor for life. Under such supposition it is suggested that the case would come clearly within the ruling of May v. Heiner, and the trust property be excluded from the value of the gross estate. It is of course not difficult through the faculty of imagination to suppose such extreme cases; however, it seems necessary that we should attempt to decide the supposed case here. It is quite possible that, should such a case arise and a donor by such process attempt to bring the trust within the principle of May v. Heiner, the courts might quite readily imply a fraudulent attempt to defeat taxation and refuse to give effect to that particular point of the instrument.

Counsel in argument have discussed numerous decisions of the Supreme Court in connection with the various phases of the case, particularly the following decisions: Young Men's Christian Association of Columbus, Ohio et al. v. Davis et al., 264 U. S. 47, 44 S. Ct. 291, 68 L. Ed. 558; Shukert v. Allen, 273 U. S. 545, 47 S. Ct. 461, 71 L. Ed. 764, 49 A. L. R. 855; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 62 A. L. R. 1244.

A careful study of all of these cases leads us to the conclusion that, where a donor in creating a trust irrevocably disposes of the trust estate both as to title and beneficial enjoyment of income, the trust estate should not be included in the gross estate in computing the tax. But where in creating the trust, the donor reserves during life the enjoyment of the income of the trust, that to cease or to pass to another only on the donor's death, then the value of the trust estate yielding such income is properly included in the gross estate.

It follows from these conclusions that the decision of the Board of Tax Appeals should be and is reversed.