**SMITH et al. v. UNITED STATES.**
No. 6432.

District Court, D. Massachusetts.
Aug. 3, 1936.

Nichols, Boyer & Morton, of Boston, Mass., for petitioners.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., and Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Julian G. Gibbs, Sp. Assts. to the Atty. Gen., for the United States.

BREWSTER, District Judge.

This action is brought to recover an estate tax, claimed to have been illegally exacted from the estate of Charles H. Farnsworth, late of Brookline, Mass.

The controversy arises over the act of the Commissioner in including in the gross estate of the decedent the value of personal property transferred by irrevocable deed of trust, and over the refusal of the Commissioner to make certain deductions for claims against the estate and certain expenses of administration.

The liability of the estate for the tax and the measure of it are to be determined with reference to the Revenue Act of 1926 as amended by the Revenue Act of 1932.

The applicable provisions of these acts are sections 803 and 805 of the Revenue Act of 1932, amending sections 302 (c) and 303 (a) (1) of the Revenue Act of 1926.

The provisions of section 803 are as follows:

"Sec. 803. Future Interests.

"(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

" '(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.' " U.S.C., title 26, § 411 (c), 26 U.S. C.A. § 411 (c).

The provisions of section 805, so far as material, follow:

"Sec. 805. Deductions.

"Section 303 (a) (1) of the Revenue Act of 1926, as amended, is amended to read as follows:

"'(1) Such amounts—* * *

"'(B) for administration expenses,

"'(C) for claims against the estate, * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.'" 47 Stat. 280, U.S.C., title 26, § 412 (26 U.S.C.A. § 412 and note).

Several questions are presented for decision. These are:

1. Was the Commissioner of Internal Revenue justified in adding to the gross estate of decedent the value of securities transferred by the decedent to trustees on November 24, 1930, either (a) as a transfer in trust under which the decedent reserved the income for his life, or (b) a transfer made in contemplation of death?

2. Whether there should be allowed as a deduction from the gross estate (a) the amount paid by the executors in compromise of an action brought against them on account of alleged acts of misfeasance and nonfeasance of the decedent as a director of the Atlantic National Bank; (b) an amount necessary to meet an assessment upon 10,448 shares of stock in the Atlantic National Bank, owned by the decedent at the time of his death; (c) legal expenses incurred in connection with the suit and with proceedings in the probate court relative to said assessment, and other legal expenses incurred by the estate in connection with the settlement of the estate tax liability?

These issues were presented upon a stipulation of facts, supplemented by oral testimony and depositions of witnesses.

First. Was the value of the property transferred in trust properly included in the gross estate?

It appears that on November 24, 1930, the plaintiffs' testator transferred to himself and two others, as trustees, certain securities which, for the purposes of the case, it is agreed were worth at the time of his death $1,149,443.27, to hold and manage the trust fund, and to pay over the net income to the testator during his life; and upon his death one-half to go to his wife and one-half to his daughter. On the death of the survivor, the trustees were to apply the funds to charitable purposes, set out in the deed of trust, and supplemental written instructions given by the donor in accordance with the provisions of the trust. This charitable purpose was the establishment and endowment of a home for aged men and women resident in Boston or vicinity. The trust was, by its terms, irrevocable, paragraph 6 of the instrument providing as follows: "The donor shall have no right to alter, amend or revoke this trust. * * *"

The trust deed provided for the substitution of the Atlantic National Bank as trustee, in the event of the death of the donor.

The property transferred by this deed of trust represented about 60 per cent. of his total wealth.

When the trust was created, under the statutes then in force, the trust being irrevocable, the value of the property would not have been included in the gross estate as a gift to take effect in possession or enjoyment after death. Reinecke, Coll., v. Northern Trust Co., 278 U.S. 339, 49 S. Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Becker, Coll., v. St. Louis Union Tr. Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Helvering, Com'r, v. St. Louis Union Tr. Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Helvering, Com'r, v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76.

The amendment of 1932, however, if applicable to this transfer, would have brought it clearly within its reach as a trust under which the donor had retained for life the enjoyment of the income from the property. The sole question presented on this aspect of the case is whether the amendment of 1932 can be given retroactive effect so as to bring within its scope a transfer made prior to the enactment of the statute.

It is the contention of the defendant that since the transfer was subsequent to the Revenue Act of 1916, the transfer may be included (Regulation 80, article 15). This contention cannot prevail in the face of the recent decisions of the United States Supreme Court in Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 70, 80 L.Ed. 76, and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

Both of these cases arose under section 302 (d) of the Revenue Act of 1926, which contained in section 302 (h) retroactive provisions as follows: "Except as otherwise specifically provided therein subdivisions * * * (c), (d) * * * of this section shall apply to the transfers, trusts

* * * whether made, created, arising, existing, * * * before or after the enactment of this Act." 44 Stat. 70.

The transfers there in question had all been completed before the effective date of the 1926 act.

Referring to the retroactive operation of section 302 (d) of the 1926 act, Mr. Justice Roberts said, in the Helmholz Case: "The transfer was complete at the time of the creation of the trust. There remained no interest in the grantor. She reserved no power in herself alone to revoke, to alter, or to amend. Under the revenue act then in force, the transfer was not taxable as intended to take effect in possession or in enjoyment at her death. Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S. Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. If section 302 (d) of the Act of 1926 could fairly be considered as intended to apply in the instant case, its operation would violate the Fifth Amendment. Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081."

In the case of White v. Poor, supra, the trust was created in 1919 and, while the court found in that case that the trust did not come within the statute, nevertheless it added that, if held to apply, the act would offend the due process clause of the Fifth Amendment. See, also, Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934; Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160; Industrial Trust Co. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191.

This conclusion is foreshadowed in per curiam opinions in Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, and McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, in which it was noted that there was "no question of the constitutional authority of the Congress to impose *prospectively* a tax with respect" to the transfers or trusts involved in the cases. (Italics supplied.)

Also, in Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 74, 80 L.Ed. 62, it is said that Congress might appropriately prescribe that a transaction should be treated as one to take effect in enjoyment at death of the donor *"if, subsequent to the passage of that act,* the creator of a trust estate saw fit to reserve to himself jointly with any other person the power of revocation or alteration." (Italics supplied.)

That an irrevocable trust, in which the donor has reserved the right to enjoy the income, is nevertheless a completed transfer is well settled. May v. Heiner, 281 U. S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Helvering v. Helmholz, supra; Burnet, Commissioner v. Northern Trust Co. (C.C.A.) 41 F.(2d) 732, affirmed 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, Com'r, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, reversing (C. C.A.) 44 F.(2d) 902; McCormick v. Burnet, Com'r, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, reversing (C.C.A.) 43 F.(2d) 277.

The effort of the attorney for the defendant to distinguish the case at bar from the Helmholz Case, in my opinion, must fail. I am unable to observe any distinction between a transfer of a number of securities, reserving the net income, and a transfer of stock in a single corporation, reserving the dividends.

My conclusion, therefore, is that the value of the property, transferred by the decedent by his deed of trust of November 24, 1930, cannot be included as a transfer by trust under which he retained for his life the enjoyment of the income of the property transferred.

■ Second. Was the transfer of November 24, 1930, made in contemplation of death?

On this issue the evidence establishes that the decedent was a very active man up to the time of his death. Since 1916, he had been president of the Quincy Market Cold Storage & Warehouse Company, and since 1928 had been president and director of the First National Stores, a chain of grocery stores. He also held offices in other companies and was a director of the Atlantic National Bank. He had been able to accumulate considerable wealth, and, for several years prior to his death, which occurred February 11, 1933, he had been interested in establishing and endowing a home for aged people and had discussed with the members of his family various plans for accomplishing this charitable purpose. He was 73 years old when he executed the deed of trust. He had given, as one of his reasons for taking the step, the desirability of placing his property, or a substantial portion of it, in the hands of trustees for management, in order that he

and his family would be protected in case he became physically or mentally incapable of attending to these matters himself, and apparently he had been much impressed by the experience of an acquaintance whose property had been dissipated after he had become aged and incompetent. Generally speaking, he was known to be a healthy, rugged man, and he actually worked up to the day of his death. For many years his daily routine had been to drive his own car to a parking space in the business section of the city, walk about one-fourth of a mile to the office of the warehouse company, attend to the business there, thence to an office of a creamery company, in which he was interested, and from there to the Atlantic National Bank, where he was in daily conference with the officers and directors. In the afternoons he would go to the office of the First National Stores, in Cambridge, where he would remain until 5 o'clock, driving his car home. This daily routine was kept up until the time of his death, except that after some time early in 1932 he did not always walk to his offices. Those associated with him, at home or in his business, first noticed any change in his condition about this time. It was when the Atlantic National Bank was facing financial difficulties. The situation apparently weighed heavily upon Mr. Farnsworth's mind, and exacted a good deal of his time and attention.

From the medical testimony in the case, it appears that prior to December, 1925, there was no history of an illness of any consequence. In December, 1925, he consulted his physician for a cold and was treated for laryngitis. At that time his physician discovered a heart murmur. In April, 1926, the doctor was consulted for indigestion, when the doctor, after examination, intimated to his patient that his heart condition was not good and that it would be well for him to go slow. He then gave him some nitroglycerin pills, but he did not tell Farnsworth what they were and did not tell him what the doctor believed to be the true condition, namely, that he was developing symptoms of angina. The witness testified that one afflicted with angina may live for many years, if he takes good care of himself. There was, at about that time, an irregular and somewhat rapid heartbeat. During 1926, Farnsworth saw his doctor several times for the same trouble, which Farnsworth insisted was nothing more than indigestion. He

refused to believe that anything was the matter with his heart. In 1927, he visited the doctor twice for an examination, when the doctor found the heart regular. In 1928, there were three visits for slight illnesses, having nothing to do with his heart condition except that, in May, 1928, which was his last visit in that year, the doctor did find a systolic murmur, a rapid and irregular heart, and the patient complained of asthmatic breathing. He was then suffering from a cold. The doctor did not disclose to his patient details of what he found, but gave him digitalis, without telling him what it was. From May 22, 1928, to September 16, 1929, Farnsworth did not see his doctor, and then he saw him only for intestinal indigestion. The irregularity and rapidity of the heart had stopped, and it was the doctor's opinion that his heart was not troubling him then. This was the last time he saw a physician until May, 1931, when he consulted his doctor for a cold. At that time the doctor found his heart in good condition. He next saw his physician on April 17, 1932, for shingles. During all of this time the decedent's blood pressure was not high—only slightly above normal. His weight remained fairly constant. In January, 1933, Mr. Farnsworth was attended by another physician who found him suffering from grippe and bladder irritation, for which he was given treatment. On February 11, 1933, he had an attack of coronary thrombosis, which terminated fatally.

On these facts I am unable to agree with the defendant's counsel that the controlling motive in creating the trust was the contemplation of death, within the meaning of the statute.

Although Farnsworth was well along in years, nothing had occurred to lead him to believe that there was any immediate danger of death. Of course, one of his age would not have a long expectancy of life, but the age of the settlor of a trust has never been deemed, of itself, sufficient evidence to show contemplation of death. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; Vaughan v. Riordan (D.C.) 280 F. 742; Gaither v. Miles (D.C.) 268 F. 692; Commissioner of Int. Rev. v. Nevin (C.C.A.) 47 F.(2d) 478; McGregor v. Commissioner (C.C.A.) 82 F.(2d) 948; Brown v. Commissioner (C.C.A.) 74 F.(2d) 281; Becker v. St. Louis Union Tr. Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Levi v. United States (Ct.Cl.)

14 F.Supp. 513. In some of these cases death followed within the two years after the transfer.

It is argued that the transfer should be deemed as one made in contemplation of death because the decedent thereby provided for his family after his death, and, therefore, it was a testamentary disposition of his property. I take it this is not the test. If it were, every irrevocable trust that provided for a disposition of the trust property after the death of the donor would necessarily be deemed a transfer by way of trust in contemplation of death. That such a test has never been applied is obvious from consideration of the cases.

If we apply the criterion laid down in the case of United States v. Wells, supra, we are brought to the conclusion that the transfer was not one in contemplation of death. Rather, it is one intended by the donor to accomplish some purpose, desirable to him if he continued to live.

The Commissioner, therefore, was not justified in including in the gross estate of plaintiffs' testator the value of the property transferred by the deed of trust of November 24, 1930.

 Third. As the deductions, it has appeared in evidence that the plaintiffs, as executors of a deceased director of the Atlantic National Bank, with other directors, were sued in the state court for certain acts, or failures, on the part of the directors, giving rise to liability. This suit was compromised by the payment of $350,-000, which total sum was apportioned among all the directors. The share falling upon the estate of Farnsworth was finally computed to be $26,660.46, which was paid by the executors after being duly authorized by the probate court, in which the estate was administered, to compromise said suit by the payment of said sum, all parties in interest consenting. This sum is claimed as a proper deduction, the Commissioner refusing to allow it.

There would seem to be no question but that claims arising out of torts are deductible. The language of the statute plainly requires the deduction of such claims. Article 36 of Regulations 80, applicable to these acts, provides: "Liabilities imposed by law or arising out of torts, are deductible." Payment in compromise of a claim is deductible. Littauer v. Commissioner, 25 B.T.A. 21. See Schoenheit v. Commissioner, 14 B.T.A. 33.

The mere fact that a claim is allowed by the probate court having jurisdiction over the estate in question does not, of itself, make such a claim deductible. United States v. Mitchell (C.C.A.) 74 F.(2d) 571; Buck v. Helvering (C.C.A.) 73 F.(2d) 760, 762.

Under certain circumstances, however, such action on the part of the probate court is conclusive. Article 30 of Regulations 80 provides: "Art. 30. Effect of court decree. —The decision of a local court as to the amount of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon such facts its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. The decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the case. This will be presumed in all cases of an active and genuine contest, but it may be rebutted by proof to the contrary. *If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim—not a mere cloak for a gift—and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant.*" (Italics supplied.)

The compromise settlement, allowed by the probate court in the present instance, would seem to fall within this language. By no stretch of the imagination, could the payments have been construed as a cloak for a gift.

 At the time of Farnsworth's death he owned 10,448 shares of stock in the Atlantic National Bank at a par value of $10 each. Proceedings were brought in the probate court under the statutes of Massachusetts (G.L.[Ter.Ed.] c. 197, § 13) for an order directing the executors to retain in their hands sufficient assets to satisfy the statutory liability of holders of stock in national banks. This petition was granted, and the executors ordered to withhold the sum of $104,480. The order was appealed to the Supreme Judicial Court of Massachusetts, which affirmed the decree of the

probate court. First National Bank of Boston v. Nichols et al. (Mass.) 200 N.E. 869.

On March 21, 1936, the Comptroller of Currency ordered an assessment upon the shareholders of the Atlantic National Bank to the extent of the par value of each share, and the receiver of the bank has demanded of the plaintiffs the payment of $104,480 which has been, or will have been, paid by the executors out of the estate.

Article 36 of Regulations 80 provides: "The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether then matured or not, and any interest thereon which had accrued at time of death."

It has been held that the liability of a stockholder of a national bank, imposed by statute (U.S.C., title 12, §§ 63, 64 [12 U.S.C.A. §§ 63, 64]), is an original liability, which attaches at the time when the contracts, debts, or engagements of the bank are entered into, although such liability does not become due or payable until the Comptroller has made an assessment in the manner required by the statute. Foster v. Lincoln (C.C.) 74 F. 382; Witters v. Sowles (C.C.) 32 F. 130; Deweese v. Smith (C.C.A.) 106 F. 438, 66 L.R.A. 971.

The liability of the stockholders of a national bank would appear, therefore, to be a personal obligation of the decedent, existing at the time of his death.

No cases have been found where the question here presented was raised. The case of Buck v. Helvering, supra, involves an analogous situation. In that case a somewhat similar liability, imposed by the law of California, was involved. At the time in question, the Constitution of California (article 12, § 3) provided: "Each stockholder of a corporation * * * shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder." The decedent left shares in a corporation chartered in California. A creditor of this corporation filed a claim in the probate court based on the stockholder's liability set forth above. This claim was allowed by the probate court, but in fact was never paid by the estate, as the corporation got back on its feet and paid the obligation. The Board of Tax Appeals held that such a claim was deductible. The Circuit Court held that it was not deductible, because it was not in fact paid, intimating, however, that otherwise the claim would have been deductible. The court said: "For purposes of appraisement of the estate for the fixing of the federal estate tax the stockholders' liability should be considered as a potential rather than an actual claim, until it is paid by the estate, or it is reasonably certain that it must be paid."

It would seem to follow that where a bank is in the hands of a receiver appointed by the Comptroller, and an assessment has been made, it would then be reasonably certain that the claim would have to be paid by the estate, especially since the decision of the Comptroller is not subject to collateral attack. Liberty National Bank of South Carolina v. McIntosh (C.C.A.) 16 F.(2d) 906. As in the case of a tort claim, the claim against the estate would seem to be founded not on a "promise or agreement" so as to raise the further question of consideration, but rather to be founded on an obligation imposed by statute.

It has been said that, "Tax laws deal with actualities, and the rules prescribed by Congress are intended to produce practical results, when applied by untechnical men. We think actuality was the thought foremost in the mind of Congress when it put the phrase 'claims against the estate' in this and other Revenue Acts. The claims which Congress intended to be deducted were actual claims, not theoretical ones." Jacobs v. Com'r of Internal Revenue (C.C.A.) 34 F.(2d) 233, 235.

The tax is measured by the net estate, as defined by the act, which provides that there may be deducted from the gross estate claims against the estate and expenses of administration.

Claims have been presented, based upon liabilities existing at the time of the death of the decedent, which have been satisfied out of the assets of the estate and have, to that extent, reduced the estate which passed to legatees. The payments have been either authorized or compelled by decree of the court in which the estate is being administered as payments made in satisfaction of asserted claims. I can see no reason why they should not constitute proper deductions from the gross estate within the meaning of the statute.

I find upon the evidence that the executors have paid $5,000 for legal services

in defending and finally compromising the suit against the directors of the Atlantic National Bank, and that the executors have paid, or will be required to pay, for additional legal services rendered in resisting the order of the probate court, and in prosecuting the claim against the United States for taxes unlawfully exacted, a further sum of $10,000 which I find to be reasonable.

 Reasonable attorneys' fees, paid before the time for claiming a refund has expired, should be deducted to the extent that they are allowed by the laws of the jurisdiction under which the estate is being administered. Leach v. Nichols (D.C.) 42 F.(2d) 918.

On what grounds the Commissioner can justify the exclusion of the attorneys' fee for services actually rendered the estate is difficult to understand. Plaintiffs have duly filed a claim for refund which specifies, among other things, the failure to make these several deductions including the deductions for legal expenses incurred and to be incurred. I do not understand that it is necessary, in order to secure the deduction, to show that the sums claimed have been actually paid, if the liability is definitely fixed and the amount of it can be determined with approximate accuracy and the claims existed at the time of the death of the decedent.

Judgment may be entered for plaintiffs in the sum of $105,261.66, with interest according to plaintiffs' motion for judgment this day allowed.