## FIRST NAT. BANK OF BOSTON et al. v. WELCH, Collector.

### No. 7079.

District Court, D. Massachusetts.
Sept. 13, 1938.

George S. Fuller and Burnham, Bingham, Pillsbury, Dana & Gould, all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. U. S. Atty., both of Boston, Mass., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and Fred J. Neuland, Sp. Assts. to Atty. Gen., for defendant.

BREWSTER, District Judge.

This action is brought to recover an estate tax which, as the plaintiffs allege, was illegally exacted on the estate of Elisabeth M. Dwinnell. The action was heard without jury. From the stipulation and evidence, the following facts appear:

The decedent, Elisabeth M. Dwinnell, was the widow of Clifton H. Dwinnell who, at one time, was president of the plaintiff Bank. Her husband died March 13, 1928, and Elisabeth M. Dwinnell died May 5, 1934.

On November 9, 1927, the decedent and her husband and the First National Bank entered into a trust agreement whereby the decedent and her husband transferred to themselves and the Bank, as trustees, certain securities set forth in a list attached to the trust agreement. On December 6, 1929, the decedent transferred additional property to be held upon the same trust. No controversy arises over the value of the total securities

which were contributed to the trust by the decedent. The value of the property so transferred was included by the Commissioner of Internal Revenue. Claim for refund was duly made and was rejected by the Commissioner.

Under the terms of the trust agreement, the trustees were directed to pay over the net income to the decedent for her lifetime, and after her death to her husband for his life, and upon the death of the survivor of the trustors the net income was to be distributed for the benefit of the children of the trustors as, in the opinion of the trustees, their needs might demand, until the termination of the trust.

Article 3 of the agreement provided in part as follows:

"The principal of the said Trust Fund shall be distributed as follows:

"(a) To each of the three children of the trustors—Marshall, Elisabeth and Nancy Tarbell—the sum of fifteen thousand (15,000) Dollars as and when they respectively arrive at the age of twenty-one (21) years;

"(b) To the said Elisabeth M. Dwinnell and, after her decease, to the said Clifton H. Dwinnell, in the discretion of the Trustees, in such amounts and at such time as their comfort, support and/or happiness may require;

"(c) After the decease of the trustors, to their issue, in the discretion of the Trustees, in such amounts and at such times as their comfort, education and/or support may require."

Then followed provisions for the distribution of the principal after a specified time and the death of the Trustors.

The property transferred by the decedent to the trustees represented substantially all of her income-producing property owned at the time.

At the time of her death, on May 5, 1934, the decedent was 60 years of age, and the cause of her death was coronary thrombosis. On November 9, 1927, when the transfer was made, the decedent was 53 years of age, in fairly good health, with no reason to expect that she would not live for many years.

It appeared in evidence that, at the time that the decedent and her husband created these trusts, the avowed purpose was to relieve the husband, who had theretofore taken full charge of the decedent's securities, of the responsibility of managing her affairs.

I find as a fact that the purposes of the trust were not associated with the idea of death, and that the transfer was not made in contemplation of death. The applicable statute is section 302(a), (c) and (d) of the Revenue Act of 1926, 44 Stat. 70, 71. This section, so far as material, provides:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death; * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *."

The contention of the defendant that the property transferred came within the scope of section 302(c) cannot prevail in the face of an imposing array of authorities. Com'r of Internal Revenue v. Northern Trust Co., 7 Cir., 41 F.2d 732, affirmed 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Com'r of Internal Revenue v. Morsman, 8 Cir., 44 F.2d 902, affirmed 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; Com'r of Internal Revenue v. McCormick, 7 Cir., 43 F.2d 277, affirmed 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413; Reinecke, Coll., v. Northern Trust Co., 278 U.S. 339, 343, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; May v. Heiner, Coll., 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

In all of these cases, the Court was dealing with trust provisions requiring pay-

ment of income to the settlor during his or her life, and the decisions are squarely against the defendant's argument that since the decedent enjoyed the income during her lifetime and the future beneficiaries did not come into actual enjoyment of the income, or principal, until she died, it was not possible to find a purpose associated with the life of the settlor. They also preclude the defendant from successfully maintaining that the transfers were to take effect in possession or enjoyment at or after death. In the light of these decisions, further consideration of this contention would not seem to be required.

The further question presented is whether the property transferred comes within the purview of section 302(d) as a transfer by trust, where the enjoyment thereof was subject, at the date of her death, to any change through the exercise of the power, either by her alone or in conjunction with any other person to alter, amend or revoke the trust.

On this question the case of Higgins v. White, 1 Cir., 93 F.2d 357, decided in this Circuit, would seem to be decisive. Although that case involves a statute imposing a tax on income, it is not distinguishable in principle from the case at bar.. The provisions of that trust were that the trustees, of whom the settlor was one, should pay to the settlor such sum or sums out of the principal as "they shall deem necessary or advisable for the comfort, maintenance, support, advancement, education or welfare of" the settlor, "and said issue * * * or they may surrender and assign said * * * trust property held hereunder to" [page 358] the settlor, in which case the trust was to cease and determine. The District Court held that these broad provisions of the trust were sufficient to bring it within section 219(g) of the Revenue Acts of 1924 and 1926, 43 Stat. 277, 44 Stat. 34, which provided for the inclusion of income of a trust where the grantor had, during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself

title to any part of the corpus of the trust. The Circuit Court of Appeals, however, held that these provisions were not tantamount to a power to terminate the trust or revest the title to the property in the trustor. The Court observed that an examination of the third clause of the trust instrument disclosed that "power to dispose of the principal of the trust fund or to terminate the trust is not a broad power unconditionally given to the grantor in conjunction with any person not a beneficiary under the trust, but is a power which can only be exercised by the trustees as such." (Citations.)

In other words, the trustees must make a determination, as trustees, that they deem it necessary, or advisable, to use the principal of the trust fund for the "comfort, maintenance and support" of the trustor. See, also, White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

The courts of this Commonwealth have consistently held that where the provisions of the trust permit the application of the principal to the support and maintenance of the settlor, the settlor has no right to demand a return of the corpus of the trust, the trustee being bound to exercise good faith in the use of the trust property, and his acts are to be governed with due regard to the rights of the owners of the future interest. Lovett v. Farnham, 169 Mass. 1, 47 N.E. 246; Gardiner v. Rogers, 267 Mass. 274, 166 N.E. 763; Boyden, Tr. v. Stevens, 285 Mass. 176, 188 N.E. 741.

In the light of these authorities, I am forced to agree with the plaintiff's contention that the powers conferred upon the trustees to pay over to the decedent, in their discretion, such amounts as her comfort, support, and happiness might require, did not amount to a power to alter, amend or revoke the trust; and whatever power was to be exercised in this respect was to be exercised by the decedent as a trustee and was not a power reserved, within the meaning of the statute.

Plaintiffs may have judgment according to their declaration.