**BLAKESLEE et al. v. SMITH, Collector of Internal Revenue.**

No. 3966.

District Court, D. Connecticut.

Jan. 18, 1939.

30

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and James E. Murphy, Sp. Assts. to Atty. Gen., and Louis Y. Gaberman, Asst. U. S. Atty., of Hartford, Conn., for defendant.

THOMAS, District Judge.

This action is for refund of a payment of an additional assessment of estate tax in the amount of $83,355.92 with interest from the date of payment, September 19, 1936. The assessment was made on the ground that a certain portion of a trust created by the decedent was intended to take effect in possession or enjoyment at or after his death. A claim for refund was disallowed on this ground and on the additional ground, put forward for the first time, that the creation of the trust constituted a gift in contemplation of death. The plaintiffs demand refund on the ground that the trust was not intended to take effect in possession or enjoyment at or after the decedent's death, and that it was not made in contemplation of death, consequently that no part of the trust assets was properly to be included in the gross estate of the decedent for estate tax purposes.

The question of burden of proof must be disposed of first. Intention is a state of mind and a question of fact, and both grounds urged for recovery depend upon the intention of the decedent. The burden is upon the plaintiffs, because they are plaintiffs, of proving a prima facie case. Wickwire v. Reinecke, 275 U.S. 101, 48 S. Ct. 43, 72 L.Ed. 184. The only means by which they could do this was by introducing convincing evidence of the decedent's intention. If the evidence was not sufficient to show what that intention was, or if it indicated intention indirectly or by subterfuge to make the equivalent of a testamentary disposition under the guise of a gift inter vivos, the defendant would be entitled to a non-suit at the end of the plaintiffs' case. If, however, the plaintiff established a prima facie case, by showing that the intention of the decedent in creating the trust had no relation to his anticipated death, the effect of any and all presumptions to the contrary was automatically overcome. There is no such thing as weighing a presumption against evidence of a fact. If the evidence is convincing and not overcome by conflicting evidence, the fact is proved, and any presumption to the contrary is superseded. If the evidence is not sufficient to prove the alleged fact to which it relates, the fact remains unproved, and any presumption per-

William H. Blodgett and Howard E. Hausman, both of Hartford, Conn., and George E. Hall and William B. Hall, both of New Haven, Conn., for plaintiffs.

tinent to the case remains unaffected. A presumption of official correctness is not of any aid to the defendant in an action to recover money paid, because any showing sufficient, if there were no such presumption, to move the Court to act, would overcome the presumption. If a prima facie case is not made out by the plaintiff, the Court will leave the parties where it finds them. After a prima facie case has been made out, however, the defendant must rebut it or the Court will give relief to the plaintiff. If the defendant rests, or fails to disprove the evidence introduced by the plaintiff by convincing evidence to the contrary, the plaintiff must prevail, despite any presumptions that may have existed until displaced by the plaintiffs' evidence.

In the case at bar, the defendant rested at the close of the plaintiffs' evidence, and the question for decision is whether the plaintiff made out a prima facie case for recovery of the alleged overpayment. The Court must determine whether the evidence supports the allegations of fact in the complaint, and, if so, whether, under the law applicable to those facts, the plaintiff is entitled to judgment.

█ The decedent created the trust on January 7, 1929, slightly more than five years before his death, which occurred April 5, 1933. He made eight additions to the corpus of the trust, on August 1 and September 9, 1929, February 14, February 15 and April 22, 1930, January 8, and November 6, 1931, and February 1, 1933. The last two were made within two years next before the date of his death, but this fact does not aid in the decision of the case, for the reason that the statutory presumption that a gift within two years before death is in contemplation of death is rebuttable, and rendered inapplicable by a showing to the contrary. The burden on the plaintiffs is the same as it would have been had the statutory presumption never been enacted.

The first question of fact to be decided is whether the decedent intended the trust to take effect in possession or enjoyment at or after his death. The trust deed, executed January 7, 1929, transferred certain securities to the three sons of the decedent as trustees, in trust to collect the income and to pay to the creator $75,000 per year, or a larger amount in their discretion, not in any event, however, to exceed 90 per cent of the income, for a period of fifteen years from the date of the trust deed, and in case of his death during the fifteen years, to his widow until the end of the fifteen year period or her earlier death.

On the death of the survivor of the decedent and his wife, and in any case at the termination of the fifteen year period, the trustees were required to pay over the principal and any accumulated income, which was annually to be added to the corpus, to the decedent's six children. The interest of each of the six children was declared to have vested at the date of the instrument, which was irrevocable.

On September 21, 1932, the decedent, the trustees and the beneficiaries entered into an agreement amending the deed of trust to provide for the payment to the creator annually the sum of $25,000, instead of $75,000. The limitation of 90 per cent of the income was retained.

The defendant urges that this amendment of 1932 was a reservation of income to the decedent for a period which did not in fact end before his death and that the portion of the principal to which such income applies is required by the 1932 Act to be included in his gross estate. Sec. 803 (a), Revenue Act of 1932, c. 209, 47 Stat. 169, 279, 26 U.S.C.A. § 411(c). This provision is new in the 1932 Act. The plaintiffs say that the case is not governed by this Act, but by the Revenue Act of 1926, § 302 (c), 44 Stat. 70.

█ The amendment of the trust deed in 1932 does not constitute a reservation by the creator of any right with respect to the income, within the meaning of the section cited. The creator had, before the enactment of that Act, irrevocably parted with the right to make any reservation as to the disposition of the trust income. He had, in 1932, no more legal or equitable right to direct what should be done with the income than a stranger. He relinquished a pre-existing right as to part of the income, leaving the previous agreement in force as to the balance. In doing so, he did not impose terms on the trustees and beneficiaries, which he had no right to impose, but made an offer which the beneficiaries, having the right to accept or reject, accepted.

The provisions of the Statute, § 803(a), Revenue Act of 1932, c. 209, relied on by the defendant are: "(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * under which he has retained for his life or for any period * * * which does not in fact end before his death (1) the possession or enjoyment

of, or the right to the income from the property." 26 U.S.C.A. § 411(c).

The decedent retained the right to the income, to the extent of $75,000, or 90 per cent, whichever was less, under the instrument creating the trust in 1929. He retained nothing under the amendment of 1932. His right to receive $25,000 or 90 per cent, whichever was less, had its source in the original direction in 1929, not in anything he did or was able to do in 1932. His right was retained under the transfer, to use the words of the statute.

The words "transfer * * * under which he has retained" relate to a reservation of income which the decedent had a right to make, and which limited the transfer. The amendment of 1932 did not limit the transfer, but diminished the existing limitation by partial relinquishment. If the amendment of 1932 had increased the amount of income to be paid annually to the creator, a different question would have arisen, which need not be considered except as it may clarify the problem in the case at bar. In such case, the source of the additional income payable to the creator would not be any right which the creator had to impose terms and conditions in 1932, but the voluntary agreement of the beneficiaries in the nature of a gift by them to the creator. The word "retained" is used in the sense of excepted from the transfer.

The amendment of 1932 did not change the terms of the trust, except to substitute the figures "$25,000.00" for "$75,000.00", and to correct an obvious inadvertent error in speaking of the right to sell securities, instead of the proceeds of the sale of such right, as income. This correction was authorized only by the agreement of the beneficiaries, as the creator had no right to amend the deed even to make a correction of a clerical omission. The amendment was made effective as of January 1, 1932, but the amendment was inserted in lieu of the language it replaced, and specifically referred, not to the date or effective date of the amendment, but to the date of the original trust deed as the start of the fifteen year period. The defendant's contention that the amendment fixes a new starting point for the fifteen year period and extends the life of the trust three years is erroneous.

■ The decedent's right to the $25,000 per year does not depend upon the 1932 amendment, but on the limitation on the transfer in 1929. The question whether the decedent intended the transfer to take effect at or after his death must therefore be determined according to the law governing the situation in 1929. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

■ The defendant concedes that the 1932 provision relied on is not retroactive. The defendant also concedes that, under the Revenue Act of 1926, the reservation of income for life did not render the trust one intended to take effect in possession or enjoyment at or after death. May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Norsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. The reservation of the income for a fifteen year term, to himself and to his widow if he predeceased her during the fifteen years, is less than a reservation for his life. If he lived more than fifteen years, the corpus was to be distributed to the beneficiaries during his life time. The term of years was not one which he could not possibly outlive. In the absence of the provision of the 1932 Act, the Court is not authorized to consider the fact that actually he died before the expiration of the fifteen year term. Under the 1932 provision, the taxability does not depend upon intention, but under the 1926 act, which governs, taxability does depend upon the decedent's intention at the time of the creation of the trust, and his death in 1933 has no bearing on his intention in 1929. The only fact before the Court leading to an inference of an intention to have the transfer take effect in possession or enjoyment at or after the decedent's death is that he reserved income for a period which might have expired after his death. This is not sufficient basis for that conclusion.

■ While the burden is on the plaintiffs to prove that the intention on which the tax was predicated did not exist, they do not have the burden of proving an opposite intention, that the transfer should not, in any event, take effect at or after his death. The requirement of the law was that the decedent should have intended his death to be the determining event which would ripen the possession and enjoyment of the transfer by the beneficiaries. If, by coincidence, he had died on the last day of the fifteen year period, this would not render the fund taxable because he intended the trust to take effect in possession and enjoyment on

that day, on which his death would have happened to occur. In such case, the date of death is not related to the donor's intention. In the instant case, the death of the decedent was not intended to be the only factor which might ripen the beneficial interest in possession or enjoyment, but the death of his widow, if she survived him and died before the expiration of the fifteen year period, otherwise the expiration of the period. His death could have the effect of enlarging the interests of the beneficiaries in only one out of three possible contingencies, that he should survive his wife and die before the end of the fifteen years.

The transfer was not one intended to take effect in possession or enjoyment at or after death, and no amount was properly to be included in his gross estate on that account.

The defendant urges, however, that the trust was a gift in contemplation of death, and that the amount sought to be included in the gross estate should in any event be included on that ground.

The defendant does not argue that the total value of the trust at the date of the decedent's death, which the Commissioner determined to be $1,660,832.63, and on first audit tentatively held taxable, should be included in gross estate. He contends only for the inclusion of $625,000 of the value of the trust, computed by capitalizing the decedent's annual income from the trust of $25,000 at four per cent. It is plain, therefore, that the Commissioner abandoned his tentative conclusion that the trust was a gift in contemplation of death, and that the defendant's contention in this case is founded on the fact that the decedent reserved an income for himself of $25,000 per year. Otherwise, to be logical, the defendant would claim that the entire value of the trust estate should be taxed as part of the decedent's gross estate.

If the transfer was made in contemplation of death, there is no reason to limit the amount to be taxed to a capitalization of the decedent's annual income from the trust.

The evidence is convincing that the decedent, at the time he made the transfer and all additions to the trust, was in a state of robust health, and expected to live fifteen or twenty years longer than he did. He believed he would outlive the trust period. This indicates that he was not motivated by a sense of impending death. Although, the cause of his death, cancer of the stomach, had probably, from analogy of other cases,

been developing for a year or eighteen months before his death, he was not until a few days before his death conscious of any symptoms of this malady. A short time earlier he had complained of indigestion, and drank hot water for it, but did not at that time consult a physician.

At the time he made the transfer in 1929, the decedent was 73 years old. At that advanced age any man knows that his life expectancy is not long. But, his father lived to 91 years, his mother 87, and longevity was a family characteristic, of which he was aware. Old age itself does not furnish a decisive test that a transfer is executed in contemplation of death. The fact that death may be near at hand is not the final criterion. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867.

The question is, What was the dominating motive,—the impelling cause of the transfer? If the motive which induced the transfer was of the sort which leads to testamentary disposition, the transfer was in contemplation of death, and the fund was taxable. In order to determine what the motive was, we may look to no source but the evidence.

The motive was not attributable to expectation of death in the near future because of ill health. The testimony abundantly establishes the fact that the decedent was in excellent health until a few days before his death, and expected to live beyond the fifteen year term of the trust. He had less reason to anticipate early death than most men of his age.

One of the reasons stated by the decedent to his lawyer, at the time of the creation of the trust, was that he desired his three sons, as trustees, to gain valuable knowledge and business experience under his guidance. This was a motive associated with living rather than death, and if it was the dominant motive, would constitute the trust a transfer not in contemplation of death. The three sons were men of young middle age, and had already gained a wealth of business experience. There was not much business experience to be gained by managing the trust. The corpus of the trust consisted of securities, and the duties of the trustees consisted primarily of collecting the income and paying it over to the decedent, and of selling some securities and investing in other securities. There is no evidence that the trust was ever administered under the guidance or supervision of the decedent. The trust was in fact man-

aged by the decedent's brother-in-law, Lyman T. Law, who was the only person familiar with it. These facts do not, however, overcome the decedent's positive declaration that such was his intention, which is not improbable. He may have anticipated that they would gain more beneficial experience than they did. He may have felt that the responsibility assumed by the trustees was itself an experience of value to them, even if they did not personally manage the trust, but only supervised. The motive is not shown to be so improbable as to overcome the decedent's declaration, coupled with his statement that he expected to survive the period of the trust and the fact that the condition of his health and the longevity of his ancestors rendered that expectation entirely possible, and even probable, despite the average remaining life period indicated by the mortality tables. The important thing to consider in this regard is not the actual number of years that he lived after executing the trust deed, but his belief as to the number of years he was going to live. He had good reason to believe that his expectancy was far above the average. Whether the trust was made in contemplation of death, or in contemplation of life, depends upon his state of mind at the time of its creation, and the testimony indicates that he was thinking primarily of life.

The defendant urges that the motive is to be found in a desire to reduce potential estate taxes. The Government says that if this desire influenced him substantially, the transfer must be deemed to have been in contemplation of death, even though there were other substantial motives, citing Farmers' Loan & Trust Company v. Bowers, 2 Cir., 98 F.2d 794, decided August 4, 1938 (the second Astor appeal). The defendant also says that the burden is on the plaintiffs to establish that the desire to avoid death duties did not influence the decedent in any material way.

 The burden on the plaintiffs is not so heavy. If it were, every case of a substantial gift would be practically conclusively presumed to have been made in contemplation of death. The motives shown by the plaintiffs must be taken as controlling and exclusive unless the evidence also discloses as it did in the Astor case, supra, that the motive of escaping death taxes was, if not dominant, at least important. There the decedent was advised by his counsel to include a power of revocation unless he con-

sidered economizing in death duties and income taxes of paramount importance. With this advice before him he made the trusts irrevocable. Unless the evidence in the instant case discloses something from which may be inferred that the decedent was actuated to attempt to save death duties, and that the trust was the result of such attempt, the Court cannot make such inference. The mere fact that death duties were high is not enough. If it were, a plaintiff could not show in any case that a transfer without consideration to his decedent's heirs was not in contemplation of death. The plaintiffs are not required to show that the decedent, in order to accomplish his other motives for making the trusts, with difficulty overcame a strong desire to leave his property in such a way that it would be taxed. Tax avoidance by a substitute which is really a sham is tax evasion, a species of fraud, and the burden of proving such a state of affairs is on the person asserting it. It is not to be presumed where the elimination of potential death taxes may be incidental to some other purpose.

 The defendant finds provisions in the decedent's will, executed January 3, 1933, which he claims, show that the trust was regarded by him as a testamentary disposition by way of advancement, which could have been motivated by no other reason than estate tax reduction. The will was executed about four years after the trust deed and throws no light on decedent's motives at the earlier date. The provision for equalization of advancements does not indicate that the advancements were made either with testamentary intent or to avoid taxes. If, as the defendant says, there were no other advancements than the transfer in trust, there was no need for equalization. The will was executed three months before the decedent's death, but nevertheless before he was conscious of any symptoms of his last illness. It indicates that the decedent anticipated that he might make some unequal gifts inter vivos after its execution, rather than that he referred to the equal gifts to the trust beneficiaries.

By his will, the decedent gave his widow the family residence and a life estate in $200,000, and stated that he made no further provision for her because he had theretofore made ample provision for her care and support. The defendant interprets this statement as referring to the $25,000 per year of trust income. He says that the

evidence discloses that he had made no other provision for her prior to the execution of the will. There is, however, nothing in the record to show that the decedent had not made adequate provision for his widow, and nothing to show that life insurance policies 'and other items in evidence were the only independent provisions which he made for her. The decedent's will is the defendant's exhibit, and the Court will presume that the recital that he had made ample provision for his widow's care and support before executing the will is true.

This recital does not necessarily refer to the $25,000 per year of trust income alone. That can hardly be considered ample provision from the standpoint of the testator, who, at the time he executed the will, expected to outlive the fifteen year period of the trust. It is not to be assumed that the testator did not take into consideration that, even if he were to die during the trust period, his widow might survive it, and that, in that event, the trust income payable to her would cease. It cannot be presumed that the testator referred to an annual income which might stop before her death as ample provision for her care and maintenance.

█ The provision of the trust deed for the payment of $25,000 per year of the trust income to the decedent's widow, in case he should die during the fifteen year term and she should survive him, was not an attempted testamentary disposition of such income. The gift was contingent on two events which might never occur, to wit, his death before the expiration of the fifteen year term and her survival. It was, nevertheless, a vested remainder, since the person to take was certain. The obvious purpose of the $25,000 annuity to decedent's widow during the remainder of the fifteen year term was to provide for her support and maintenance in case of his death; but this alone is not enough to establish that the trust or any part of it was created in contemplation of death. The Supreme Court of the United States has very recently spoken definitively on this subject in Colorado National Bank of Denver v. Commissioner of Internal Revenue, 59 S.Ct. 48, 83 L.Ed. ——, decided November 7, 1938. Speaking for the Court, Mr. Justice McReynolds said [page 49]:—

"The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death'. Broadly speaking, thoughtful men habitually act with regard to ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute.

"Here, the Board having before it all the circumstances, including the provisions of the will, concluded that they disclosed an effective motive not directly springing from apprehension of death. And * * * there was substantial basis for that view. Its action is in accord with principles accepted by us in Shukert v. Allen, 273 U.S. 545, 47 S.Ct. 461, 71 L.Ed. 764, 49 A.L.R. 855; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A. L.R. 397; May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35."

█ In the instant case, it is clear that there was an effective motive not directly springing from apprehension of death. In view of all the evidence, I find and conclude that the transfer was not made in contemplation of death, and that no part of the trust assets may properly be included in the gross estate of the decedent. Accordingly, the plaintiffs have established their case and are entitled to judgment as demanded in the complaint.

The findings of fact and conclusions of law above set forth are sufficient to comply with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and an order so providing must be incorporated in the order which will be submitted for signature properly consented to as to form.