MARSHALL v. UNITED STATES.

No. 7301—J.

District Court, S. D. California, Central Division.

Jan. 18, 1939.

Wm. J. McNichols, of Los Angeles, Cal., for plaintiff.

Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty. for Treasury Department, all of Los Angeles, Cal.

JAMES, District Judge.

Plaintiff sues to recover an amount of $16,076.36, together with interest, on account of an alleged overassessment of income tax for the calendar year ending De-

cember 31, 1928. The dispute between the taxpayer and the United States arose because of the Government's claim that plaintiff had realized a larger profit by reason of the sale of real property during the year 1928 than the amount returned by her.

In the month of June, 1928, plaintiff made a sale of real property for a total consideration of $219,000, receiving on account of the purchase price the sum of $25,000. Conveyance was made and promissory note and mortgage was taken back by the plaintiff from the vendee for the balance of the purchase price, the note being payable ten years after date with interest semiannually. In her income tax return for the year 1928 the sale was reported as on the installment basis and accounted for the $25,000 initial payment received. On the 10th of October, 1928, plaintiff transferred the note and mortgage to a Los Angeles bank to be held by it under the terms and provisions of an express declaration of trust executed by the plaintiff. The trustee, by the terms of the trust instrument, was given complete control of the trust property, the income derived being provided to be paid in installments to the plaintiff trustor for the term of her natural life. At her death such income was to be distributed to the two sons of the trustor during the terms of their natural lives in equal shares. Other particular provisions as to the application of the income subsequent to the death of the trustor need not be stated. The trust instrument contained the provision that the trust "is hereby declared to be irrevocable either as to the whole or any part thereof * * *."

The prime question involved is as to whether under the applicable statutes, where the vendor of real property makes transfer in trust of security first reported as payable on the installment basis, income tax on the total amount of profit represented by the value of such security, immediately becomes due. That was the theory upon which the revenue officers acted. A pertinent quotation may here properly be made from the case of Nuckolls v. U. S., 10 Cir., 76 F.2d 357, 359, where the court said:

"Prior to the enactment of section 212 (d) of the Revenue Act of 1926 (26 U.S.C. A. § 953(d), there was no statutory authority for postponing the tax on gains realized from sales until deferred payments were collected, although regulations had been theretofore promulgated to permit such postponement, the validity of which was in doubt. Appeal of Todd, 1 B.T.A. 762; Appeal of Blum's, Inc., 7 B.T.A. 737, 751. The regulations and the subsequent statutes did no more than to grant to taxpayers the privilege of returning gain from certain sales in subsequent years; the language is, 'the income may * * * be returned on the basis and in the manner above prescribed in this subdivision.'[1] Unless the taxpayer so elected, section 111(c) Revenue Act 1928 (26 U.S.C.A. § 2111(c) [26 U.S.C. A. § 111(b)], applied, i. e., 'the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.'

"After taxpayers were accorded the privilege of postponing the tax on the gain from deferred payment sales, another move was made in the perpetual contest between the taxpayers and the taxing authorities. Many taxpayers electing to avail themselves of the installment privilege disposed of the unpaid installments, and contended, with some success, that the profit represented by the unpaid installments escaped any tax. To meet this move, Congress in 1928 passed section 44(d) [26 U.S.C.A. § 44(d)] above quoted. The Committee Reports to Congress (H.Rep.No. 2, 70th Cong., 1st Sess., pp. 14, 16) make the purpose entirely clear, if the language of the subsection, its context, and its history, admit of any doubt. Congress simply attached a condition to the option granted taxpayers by section 44, to the effect that if the taxpayer disposes of or transmits the deferred obligations, he will pay the balance of the tax measured by the then value of the obligations. This condition is designed to plug a leak which tax counsel had discovered in a plan exacted for the benefit of taxpayers. Congress is not required by the Constitution to extend the privilege at all, as indeed it did not prior to 1926; when it did so, it had a right to attach thereto this condition. The taxpayer is not obliged to avail himself of the privilege conferred; if he does so, he takes it with the condition attached. He cannot complain that his constitutional right has been invaded by virtue of his own voluntary act in availing himself of a con-

---

[1] Tull & Gibbs v. U. S. (C.C.A.9) 48 F. 2d 148, holds that the taxpayer has the option, and that he must take it with its burdens.

ditional privilege tendered him. If he does not like the condition, he need not exercise the option. Appellant, availing herself of the privilege granted by section 44(b), at the same time challenges the constitutional validity of section 44(d) which is an integral part and an inseparable condition of section 44(b). This she cannot do. One claiming under a statute may not deny its validity. Kansas City, M. & B. R. Co. v. Stiles, 242 U.S. 111, 117, 37 S.Ct. 58, 61 L. Ed. 176; Grand Rapids & Indiana R. Co. v. Osborn, 193 U.S. 17, 29, 24 S.Ct. 310, 48 L.Ed. 598; Baltimore & O. R. Co..v. Lambert Run Coal Co. (C.C.A.4) 267 F. 776."

When the Revenue Department made its assessment for deficiency after the transfer in trust it calculated the value of the note and mortgage at less than the balance of the unpaid purchase price, determining that the note had a fair market value of $120,000. Plaintiff alleged in her complaint that such value did not exceed the sum of $60,000, denying all the while that the Tax Department was authorized to accrue the entire amount during the year 1928, because of her having made her income report of the sale on the installment basis. At the trial the plaintiff offered no evidence as to the value of the note and mortgage. One witness produced by the defendant testified that the value at the pertinent time was not less than $102,000. Counsel for the defendant undoubtedly states the correct rule, which is that valuations fixed by the taxing officer are presumably correct, unless overcome by evidence of the complaining party offered at the trial. It would appear that in the year subsequent to 1928 there was some change in vendees and that eventually the note was not paid out, with the consequence that no profit was actually realized in the end. However, we have to deal with the situation as it existed in 1928, considering the terms of the statute. As noted in the Nuckolls case, the law originally required an accounting of profits calculated as of the date of sale, whether any part of the payment of the purchase price was postponed or not. That the right to make income reports of profits on real state under the installment method is a privilege extended to the taxpayer is distinctly held in Lawler v. Commissioner, 9 Cir., 78 F.2d 567. The privilege of allowing a report as for installment payments was coupled with conditions (Revenue Act of 1928, 45 Stat. 805, section 44(a), (b) and (d), 26 U.S.C.A. §§ 44(a, d), 44 note. Subdivision (d) is quoted:

"(d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

Did the creation of the trust amount to a disposition of the installment note "otherwise than by sale or exchange?" The trust, as before noted, was irrevocable and the plaintiff (trustor) effectually disposed of any right to manage or control the property affected. In Smith et al. v. U. S., D.C.Mass., 16 F.Supp. 397, the trust there involved being irrevocable was said to amount to a completed transfer of the trustor's right. Cases are cited sustaining that view. Another pertinent case is that of First National Bank of Boston v. Welch, Collector, 24 F.Supp. 695, by the same court. While these cases are District Court decisions, the authorities collected therein fully sustain the views expressed.

At the time the sale of plaintiff's property was made in 1928 it showed an exceedingly large profit over the cost to her. If adjustment had been made of income taxes without adopting the privilege of reporting in installments, it seems clear that the amount would have been larger than that which the Revenue Commissioner finally fixed. Plaintiff, considering her prospective liability to the Government, may have used poor business judgment in accepting such a small cash payment on account of the purchase price. Furthermore, if she had not transferred the note and mortgage into the trust as she did, she could have been protected in a manner as would reduce her taxes. Hence, however, unfortunate may be her predicament, it must be said to have been self-created. In the end, she has practically sustained a loss.

The conclusions expressed require that findings and judgment be in favor of defendant. It is so ordered.