**JENNINGS et al. v. SMITH, Collector of Internal Revenue.**

**Civil Action No. 1007.**

District Court, D. Connecticut.

Dec. 20, 1945.

Marsh, Day & Calhoun and Philo C. Calhoun, all of Bridgeport, Conn., for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and Edward J. Lonergan, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

HINCKS, District Judge.

The plaintiffs, executors of the will of Oliver Gould Jennings, paid the defendant, Collector of Internal Revenue for the District of Connecticut, an estate tax in the amount of $2,082,730.40 plus interest on certain deficiencies included therein. The executors had elected, under Section 811 (j) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(j), to value the assets of the estate for estate tax purposes as of one year after the decedent's death. In determining the total estate tax, the Commissioner of Internal Revenue included therein all interests and dividends received by the executors during the period between the death of the decedent and the optional valuation date, which increased that tax by $109,089.19, including interest. Subsequently, the Supreme Court in Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L. Ed. 940, 132 A.L.R. 1035, held that such income was not includible. In August, 1942, the plaintiffs filed with the defendant a claim for the refund of the amount paid as a result of the inclusion of that income. The claim for refund was rejected and the plaintiffs bring this suit.

The ground for the rejection of the claim and the only defense to this suit is that there was not included in the decedent's gross estate the value of certain property transferred in trust by him which should have been included under Section 302(c) and (d) of the Revenue Act of 1926 as amended, 26 U.S.C.A. Int.Rev.Acts, pages 227–229. The Government is barred by the three-year Statute of Limitations from assessing an additional estate tax, but the defendant claims by way of set-off the amount of that additional tax up to the amount which the plaintiffs sue to recover. It is agreed that the amount of the additional tax exceeds the amount of refund claimed by the plaintiffs, and that if the defendant prevails in his contention that the value of the property transferred in trust should have been included in the decedent's gross estate, he is entitled to judgment.

### Findings of Fact.

1. The decedent, Oliver Gould Jennings, was born on April 22, 1865, and died testate on October 13, 1936. Decedent's family consisted of his wife, Mary Brewster Jennings, to whom he was married in 1896, and his two sons, B. Brewster Jennings and Lawrence K. Jennings, born in 1898 and 1903 respectively. At the time of his death, decedent had four grandchildren, three the children of B. Brewster Jennings and one the child of Lawrence K. Jennings.

2. At various times from November 16, 1916, to December 31, 1933, both decedent and his wife made gifts of substantial value to their sons.

3. Up until 1936, decedent lived an exceptionally active life, participating in a number of sports, including tennis, and in many civic activities. Since his youth he had suffered from a shortness of breath due to a respiratory condition. In 1936 there was a decided change in his condition, and during that year he was much less active.

4. Between July 12, 1934, and July 15, 1935, the decedent executed ten wills and a codicil. One will was executed on December 29, 1934, and one on July 15, 1935. The only change in the disposition of decedent's estate effected by the will of December 29, 1934, from that provided by the will and codicil then in effect was a reduction in the amount of the bequest to the Bridgeport Hospital.

5. On December 29, 1934, the decedent and his wife executed two trust deeds. In each deed the trustees named were Oliver G. Jennings and his two sons B. Brewster Jennings and Lawrence K. Jennings. One trust was for the benefit of the family of B. Brewster Jennings and the other was for the benefit of the family of Lawrence K. Jennings. The two trust deeds are identical, except for the beneficiaries and the property transferred. Those portions of the deeds which are material are as follows (italics added) :*

"2. The trustees shall receive and collect any increments to the capital and also the income arising from said trust fund, and after paying or providing for current and anticipated taxes, charges and expenses of execution of this trust, including reasonable compensation for financial advice and legal and clerical services, shall dispose of the net income during the life of said B. Brewster Jennings as follows: At the end of each calendar year during the life of said B. Brewster Jennings, commencing with the year 1935, they shall accumulate said net income by adding and incorporating the same into the capital of said trust fund and thereafter administering the same

---

* Deed of trust for benefit of B. Brewster Jennings family taken for purposes of illustration.

as an integral part of said capital, *PRO-VIDED, HOWEVER, that the trustees shall have power, in their absolute discretion,* at any time or times during any year in his lifetime prior to the amalgamation of that year's net income into capital, *to utilize any or all of said current net income by either (a) paying over the same to said B. Brewster Jennings and/or to any one or more of his issue and/or to the guardian of any minor issue,* in such amounts as said trustees may deem advisable, *or (b) applying the same for the benefit, support and maintenance of B. Brewster Jennings and/or the benefit, support, maintenance or education of any one or more of his issue, in either case, (a) or (b) at such times and in such manner and in such proportions among such of said beneficiaries, if any, as the trustees may deem advisable, or (c) by both such payments and such applications of income, and PROVIDED FURTHER, that the trustees,* in the case of each payment or application of income, *shall determine that such disbursement is reasonably necessary to enable the beneficiary in question to maintain himself and his family, if any, in comfort and in accordance with the station in life to which he belongs.* In making such determination the trustees shall take into consideration the amount of income which the beneficiary may enjoy from sources other than this fund, but *the decision of the trustees shall be final and conclusive.* At the end of each calendar year, the trustees shall add to the capital, as above provided, all of said net income which has been withheld by them and which accordingly has not during that year been paid over to, or applied for, any of said beneficiaries. The trustees may also resort to the capital for use and application as hereinafter provided in Paragraph 3(f)."

Paragraph 3 provides for the distribution of principal of the respective trusts at the death of either B. Brewster Jennings or Lawrence K. Jennings to the issue or for their benefit, including a provision that if a grandchild is less than twenty-five years old at the father's death the trustees' powers as to accumulation and disposal of income shall continue, with certain stated modifications.

Subparagraph (f) of Paragraph 3 then reads as follows:

"(f) In the course of administration of said general trust fund and of said separate trust funds, that is to say, either before or after the death of said B. Brewster Jennings, if said *B. Brewster Jennings or any one or more of his issue should suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary, they may resort, as the case may be, to the capital of said general fund or to the separate fund held for the benefit of the branch of the family to which such person or persons belongs, and may apply any part of the same for his benefit and that of his wife and/or children, and they may also pay over part of said capital to him, to the extent in either event they deem reasonably necessary in their discretion to meet such conditions.* In so doing they shall, as above provided, consider other income of said beneficiary.

"Their powers in this respect shall include the provision of a place of residence for any such person either by way of rental of suitable premises or by acquisition of land and the construction of suitable buildings or the alteration and reconstruction of buildings already thereon."

Paragraph 10 provides that the trustees shall act by majority vote.

Paragraph 13 provides that each trustee may, within certain limitations, select his successor either by will or other written instrument. Successor trustees are given the same powers as original trustees.

Paragraph 18 reads: "This trust shall be irrevocable."

6. On December 21, 1935, decedent made transfers of additional securities to the trustees under both of the trust deeds.

7. The value of the property transferred by the original trust deeds constituted approximately 5.36 per cent of the entire market value of decedent's estate on December 29, 1934. The value of the property transferred to the trusts on December 21, 1935, constituted approximately 11.8 per cent of the then market value of decedent's estate.

8. Said trusts were not in fact established by decedent in contemplation of death. The predominating motive of the decedent in making these transfers was either to provide for his sons and their families or to reduce income taxes, but not to reduce the tax on his estate.

9. All current income from the Lawrence K. Jennings trust was paid to him during the years 1935 and 1936, the trustees, of whom decedent was one, having

deemed such payments advisable and having unanimously determined that the same were then reasonably necessary to enable said Lawrence K. Jennings to maintain himself and his family in comfort and in accordance with his station in life. No other payment or application of income or principal from either of said trusts was made or requested at any time during the lifetime of the decedent.

### Conclusions of Law
### and
### Discussion.

■ 1. The property transferred in trust is not includible in decedent's gross estate under Section 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Code, § 811(c), as having been transferred "in contemplation of * * * death."

The evidence is overwhelming that the decedent was throughout his life and during the time of the establishment of these trusts and the subsequent transfers in trust an exceedingly active, healthful and optimistic man, who liked to bestow gifts upon his children. Although he may have had in mind the reduction of income taxes, it is clear that neither the thought of death nor the evasion of estate taxes was the impelling cause of the trust transfers. That is sufficient to rebut the presumption embodied in the statute. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 734. See also the opinion of this court in Blakeslee v. Smith, D.C., 26 F.Supp. 28, affirmed, 2 Cir., 110 F.2d 364.

2. Under the terms of the trust, and particularly Paragraphs 2 and 3(f) thereof, the trustees were given power to cause a shift in the enjoyment of current income and to invade the corpus but the power was made to depend upon their finding that a stated condition had been fulfilled. Even upon such a finding the trustees were under no duty in the premises; their finding created no enforcible rights in any of the beneficiaries.

Reference to the trust instrument discloses that if tested by its potential scope the power was broad enough to accomplish (a) under Paragraph 2 year by year a complete diversion of all income as it accrued, which would otherwise be held and accumulated for the benefit of the remaindermen, to a son whose life was the measure of the trust period, and (b) under Paragraph 3(f) an invasion of the corpus to the extent deemed reasonably necessary in the discretion of the trustees.

3. The property transferred in trust is not excludible from the decedent's gross estate by reason of the fact that under the trust instrument his power to alter the enjoyment was exercisable only by him in his capacity as trustee.

The statute here involved is as follows, Revenue Act of 1926, c. 27, 44 Stat. 9:

Sec. 302 (as amended by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680). "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States * * *

"(d) (1) (as amended by Section 401 of the Revenue Act of 1934, c. 277, 48 Stat. 752) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth." 26 U.S.C.A. Int.Rev. Acts pages 227, 229.

■ By the Revenue Act of 1936 enacted in June, 1936, 49 Stat. 1744, 26 U.S. C.A. Int.Rev.Code, § 811(d) (1), it was expressly provided that a power to alter, amend, or revoke as described in subsection (d) above, would bring the trust property within the orbit of the revenue laws if found to rest in the decedent "in whatever capacity exercisable." Although only prospective effect was provided for this 1936 amendment, under the weight of authority its content was declaratory of the pre-existing law which is applicable here. Welch v. Terhune, 1 Cir., 126 F.2d 695; Union Trust Co. v. Driscoll, 3 Cir., 138 F.2d 152.

■ As a result of this conclusion, coupled with the express statutory provision which includes property subject to a power in the decedent "either alone or in conjunction with any person", we have a situation in which the rights of the parties must be determined as though under the

trust instrument the power provided resided solely in the decedent.

■ 4. Under the terms of the trust instrument, the decedent had power "to alter" "the enjoyment" of the property transferred in trust within the meaning of Section 401(d) of the Revenue Act of 1934, 48 Stat. 752, 26 U.S.C.A. Internal Revenue Acts, pages 228, 229.

There can now be no question that an unconditional power to make payments of the sort authorized here with the resulting shift of economic benefit as set forth above comes within the statute. Commissioner v. Bridgeport City Trust, 2 Cir., 124 F.2d 48, certiorari denied 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747, Commissioner v. Hofheimer's Estate, 2 Cir., 149 F.2d 733, Guggenheim v. Helvering, 2 Cir., 117 F.2d 469, certiorari denied 314 U.S. 621, 62 S. Ct. 66, 86 L.Ed. 499.

But here it must be noted that the birth of the power was not made to depend upon a contingency of fact over which the decedent had no control. In this respect the case here may be distinguished from Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 74 F.2d 851; and Helvering v. Tetzlaff, 8 Cir., 141 F.2d 8, where the power was made to arise upon the prior death of a life tenant.

Here it is plainly inferable that the decedent's original disposition, whereby his sons were excluded from all beneficial interest, was based (a) upon his conception of the amount of income necessary to maintain the sons in what he conceived to be their proper station in life, and (b) the capacity of the sons, through their earnings or independent income, to support that standard without paternal aid. His estimate of the reaction of these factors shaped the disposition. But under the trust the decedent reserved power to reexamine the same factors and after ascertaining any changes which might, or might not, have occurred therein to give effect to his reappraisal of their current reaction. Thus the power reserved was essentially as broad as the power drawn upon to accomplish the original disposition. The one as much as the other was truly a characteristic of ownership—a power effective to accomplish a shift of economic benefits. The power to alter is no less real because its exercise is conditioned upon a consideration of the same factors which controlled the original disposition and which normally would be expected to control any alteration within the power of the decedent irrespective of the condition.

Patterson v. Commissioner, 36 B.T.A. 407, upon which the plaintiff leans, and also First National Bank of Boston v. Welch, D.C., 24 F.Supp. 695, may be distinguished on the ground that there the finding by the decedent of the factors relevant to a shift in the economic benefit of the trust created not only a power to divert but also a right in the beneficiary to compel an exercise of the reserved power. In the Patterson case, however, it may be noted that the opinion was not made to turn upon that point.

Commissioner v. Dravo, 3 Cir., 119 F.2d 97, must also be distinguished. There the power involved was merely a power "to advance" principal to the life beneficiary who was entitled to current income. The court interpreted this to mean not a shift in the economic benefit of the property but merely a loan to the beneficiary for which the trust estate would be entitled to reimbursement. Thus viewed, the power essentially was one relating to the management of the trust rather than to the disposition of the beneficial interests. Moreover, insofar as that case may be considered on all fours with the one at bar, it is superseded by Union Trust v. Driscoll, supra, decided by the same court.

In McFadden v. United States, D.C., 20 F.Supp. 625, the alleged power to alter related only to beneficial interests which were limited to the life of the decedent. Thus upon the death of the decedent there was left no power to alter, since that event terminated the only interests which were subject to a power to alter.

Higgins v. White, 1 Cir., 93 F.2d 357, turns upon a holding that a power given to the grantor in her capacity as a trustee is not a power which is effective to bring the property affected within the reach of the Revenue Act. In effect, this doctrine was overruled by Welch v. Terhune, supra, also in the First Circuit, upon which in part my third conclusion of law, above stated, was predicated.

The plaintiff also relies on Commissioner v. Flanders, 2 Cir., 111 F.2d 117, 119, which was concerned with a trust under which a shift in the enjoyment of the corpus would result from a sale of stock in the trust corpus which the decedent had power to authorize in the event of an "emergency" or change in the affairs of the company

which had issued such stock "which may render it advisable that said shares of and interest in said capital stock should be sold." The opinion contains a dictum by the majority of the court which expresses the view that such a power was ineffective to bring the property within taxable reach because the contingency upon which the power was conditioned never came to pass. The plaintiff seems to find some comfort in this dictum. But it will be noted that under the dictum in this case only the property in the B. Brewster Jennings trust would be excluded from the trust estate: in the Lawrence K. Jennings trust the contingency came to pass and as a result at the decedent's death he had the power and indeed was exercising the power to divert income to the son. However, I think the Flanders case distinguishable from both of the trusts here in that there it was apparent that the finding necessary to give the power effect turned upon factors quite different from those which led the decedent to create the trust. Indeed, the operative finding in the Flanders case was essentially one pertaining to the management of the trust as distinguished from one relating to the needs of a beneficiary who would benefit from the exercise of the power.

Holding, as I do, that the trust property is includible under subsection (d) of Section 302 of the Act, there is no need to decide whether it is includible by force of subsection (c) thereof.

5. The defendant is entitled to judgment, with costs. The Clerk will enter judgment accordingly.